# EXHIBIT 11

| | |
|---|---|
| **From:** | David Callanan, MD <dcallanan@avicedarx.com> |
| **Sent:** | Tuesday, October 17, 2023 7:47 AM |
| **To:** | Jill Healy; Patrick Healy |
| **Cc:** | Mohamed A. Genead, MD; Wintner, Thomas |
| **Subject:** | agreement |

To the Trial Runners Team:

As the Sponsor for the AVD-104 Study, we wish to be clear with you, the CRO, on how we would like to proceed now that we have provided notice of termination of our Agreement, and given that said termination will become effective on November 11, 2023. To assist with communication, I ask that you direct all future operational correspondence to me, and that you provide me with a single point of contact at Trial Runners.

Per the MCSA, on the effective date of termination, "Sponsor immediately and automatically assumes (without the need for any further agreement/s) any and all legal and regulatory obligations of the applicable Study(ies) including all those previously transferred to and the responsibility of the CRO." MCSA § 4.3. It follows from this that *prior* to the effective date of the termination—in other words, during the period *before* November 11, 2023—the CRO and Sponsor should work together to effectuate the transfer of responsibility of the Study from CRO to Sponsor.

Section 7.5 of the MCSA further spells out what this transfer should look like. In particular:

1. the CRO and Sponsor shall "cooperate to provide for an orderly wind-down of Services provided by CRO hereunder";
2. the CRO shall "not undertake further work, shall use its best efforts to avoid incurring any additional costs, to mitigate all costs, damages, penalties, and expenses or shall not enter into further commitments with regard to any Services, except as mutually agreed by the parties";
3. the CRO shall "use all reasonable efforts to conclude or transfer any uncompleted Services, as directed by Sponsor, as expeditiously as possible and in accordance with all Applicable Laws"; and
4. the CRO shall "deliver to Sponsor all Work Product developed to as of the date of such termination or expiration, and all formats available, including electronic format and computer files and programs, that are the property of Sponsor as defined in this Agreement and such Project Addendum."

None of the above provisions make any sense if the CRO only starts "cooperating" with the Sponsor to provide for an orderly wind-down of Services *on or after* November 11, 2023—because on that date, the CRO has no legal or regulatory rights to the Study, which automatically transfers to the Sponsor. In other words, if Trial Runners does not wish to cooperate with Aviceda, *starting now*, on a mutually agreeable and orderly wind-

down of Services, that constitutes a breach of contract and/or a breach of the implied covenant of good faith and fair dealing under Delaware Law.

Accordingly, Aviceda, as Sponsor, requests that Trial Runners, as CRO, do (or not do) the following with respect to the AVD-104 Study:

1. Perform no further monitoring activities for clinical sites in Part 1 of the Study.
2. Perform no further PSSV or site initiation activities for Part 2 of the Study (Siglec Trial).
3. Provide ongoing access to the Medrio database and CTMS for Part 1 and Part 2 of the Study.
4. Ensure that all Part 1 documents are filed in CTMS.
5. Ensure that all safety reports for Part 1 are filed in CTMS.
6. Ensure that any Part 2 documents that have *already* been created and/or completed are filed in CTMS.

For any of the above activities #1-6, please deliver to Aviceda an invoice with itemized costs associated with each activity, and Aviceda, upon review of the invoice for reasonableness, will pay it.

For any additional activities outside of #1-6 above, please explain to Aviceda why the activity is necessary under the circumstances so that Aviceda may determine whether it is an agreed additional activity for which Trial Runners may submit an invoice itemizing the costs associated with each said additional activity, and so that following said determination, Aviceda, upon review of the invoice for reasonableness, can pay it.

Aviceda is not responsible for payment of any Services performed by Trial Runners after today that are not approved according to one of the mechanisms outlined above. Nothing in the parties' Agreement permits Trial Runners to perform Services, as CRO, that Aviceda, as Sponsor, does not wish Trial Runners to perform. That represents both corporate waste and a breach of the implied covenant of good faith and fair dealing.

I have also been informed that your counsel sent to our counsel a blanket demand for $1,395,564.03 on October 13, 2023. Our counsel has requested, but we have not yet received, any breakdown of that amount. We cannot in good faith consider your demand unless it is, at minimum, supported by invoices, receipts, purchase orders, or other evidence of itemized expenses actually "earned" or "incurred" according to the parties' Agreement.

Furthermore, I have been informed that your counsel, by the same letter dated October 13, 2023, has refused to return any portion of the $945,351.40 in initial payments that Aviceda made for Part 2 of the Study, alleging that this amount is for expenses that "have already been incurred by Trial Runners in preparation for part 2 of the Study." If that is true, please provide an itemized accounting and supporting evidence—again in the form of invoices, receipts, purchase orders, documents created, or the like—for this exact amount, and then we will in good faith consider your request to retain some or all of this Part 2 initial payment.

Let me know if this is not clear or you have any questions.

David

 

**David Callanan, MD**
**Chief Medical Officer**

**AVICEDA THERAPEUTICS INC.**
One Broadway, 14th Floor
Cambridge, MA, 02142
www.avicedarx.com

E dcallanan@avicedarx.com

M 817-312-9258

 

This email is for the use of the intended recipient(s) only. If you have received this email in error, please notify the sender immediately and then delete it. The information contained in this communication may be confidential. If you are not the intended recipient, you must not keep, use, disclose, copy or distribute this email without the author's prior permission. We have taken precautions to minimize the risk of transmitting software viruses, but we advise you to carry out your own virus checks on any attachment to this message. We cannot accept liability for any loss or damage caused by software viruses. Thank you in advance for your cooperation.