UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AVICEDA THERAPEUTICS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> TRIAL RUNNERS, LLC, <br><br> Defendant | Civ. A. No. 1:23-cv-12468-IT |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS COUNTS 1 AND 2**

PRELIMINARY STATEMENT

Aviceda Therapeutics, Inc., brought this case when a dispute about the transition of management of a clinical trial was brewing. Aviceda had just terminated the contract it had with the defendant, Trial Runners, LLC, without cause, and as the complaint makes clear, the parties were not agreed on what had to happen next. But while there was a real dispute as of the date of commencement, the complaint itself shows that no monetary loss compensable by damages had then been incurred.

Since then, the parties, through counsel, have worked through most of the issues that sparked the filing of the lawsuit. It's possible that there are still some disputes about what more needs to happen in order to have a successful transition of the study, and so Trial Runners does not seek dismissal of Count 3, Aviceda's claim that it is entitled to declaratory relief. It's also possible that the parties will be unable to resolve Trial Runner's claim that it is owed money for the work it did, and so Trial Runners reserves the right to assert counterclaims when it answers the complaint. But Counts 1 and 2 of the complaint—the claims for damages on account of

1

breach of contract and breach of the implied covenant of good faith and fair dealing—must be dismissed for want of standing. At the time the complaint was filed, Aviceda had suffered no injury for which it could recover damages.

## FACTS

For purposes of this motion, Trial Runners takes the facts as alleged, reserving the right to deny the allegations when it answers. *See Pennell v. City of San Jose,* 485 U.S. 1, 7 (1988); *Gustavsen v. Alcon Labs., Inc.,* 903 F.3d 1, 7-8 (1st Cir. 2018).

Aviceda is a biotech company that develops immunomodulators to alleviate chronic inflammation. (Compl. ¶ 11). It has a clinical candidate, AVD-104, that has the potential to treat geographic atrophy, or "GA," a form of age-related macular degeneration. (Id. ¶¶ 19-20). Trial Runners is a contract research organization, or "CRO," focusing on ophthalmology. (Id. ¶ 13). Aviceda, acting as sponsor of the trial, contracted with Trial Runners, acting as CRO, to perform services concerning a clinical study of AVD-104. (Id. ¶ 21). The trial had two parts, Part 1 and Part 2. Part 1 was a smaller-scale portion of the study and is still ongoing, and Part 2, a larger-scale portion of the study, is now underway, too. (Id. ¶¶ 27-29).

Aviceda alleges that it has paid Trial Runner in full for Part 1, except for a few invoices that as of the date of the complaint were recently issued (Id. ¶ 28), and that it has paid a significant sum for Part 2 (Id. ¶ 30). While it say it has not yet received an accounting (Id.), there is no allegation that Aviceda has overpaid. Aviceda also alleges—and Trial Runners agrees—that Aviceda owns the data defined in the contract as "Sponsor Confidential Infromation." (Id. ¶ 32).

Aviceda decided to terminate the contract with Trial Runners. (Id. ¶ 56). The termination was pursuant to Section 7.2 of the contract. (Id. Ex. 5). Thus it was a termination without cause.

(Id. Ex. 1 at 14).[1] So while Aviceda alleges supposed underperformance, it is not alleging a material breach of the contract leading to the termination, and the allegations about Trial Runner's performance before the termination are not material to the claims. Trial Runners does not dispute that Aviceda had the power to terminate without cause.

According to Aviceda, Trial Runners improperly terminated its access to the study database after the termination. (Id. ¶¶ 59-69). But Aviceda also acknowledges that the issue was resolved two days later (Id. ¶ 72), and it makes no allegation that any harm resulted.

Aviceda also alleges a general air of uncooperativeness in the transition process. For example, it accuses Trial Runners of making threats to obstruct a transition unless it was paid. (E.g., Compl. ¶ 80). It alleges that Trial Runners told Aviceda that all communications should be handled through the company's then-counsel. (Id. ¶ 79). And it alleges that Trial Runners announced that it planned to "move forward with the study objectives until the termination date," which Aviceda interpreted to mean that Trial Runners did not plan to cooperate with the termination. (Id. ¶ 81). But while this is all fertile ground for a declaratory judgment claim about what Trial Runner's obligations were going forward, there is no non-conclusory allegation that any of the conduct alleged caused Aviceda to suffer an injury.

The Complaint contains three counts: a count for breach of contract (Count 1), a count for breach of the implied covenant of good faith and fair dealing (Count 2), and a count for declaratory judgment (Count 3). It seeks compensatory damages (demand for relief 2), costs and fees (demand 3), and declaratory relief (demand 4), along with a standard demand for "all other and further relief deemed just and proper by the Court."

---

[1] The termination for cause or for material breach provisions are found in Section 7.3 and 7.4 of the contract. (Id. Ex. 1 at 15).

(Id. Ex. 1 at 14).[1] So while Aviceda alleges supposed underperformance, it is not alleging a material breach of the contract leading to the termination, and the allegations about Trial Runner's performance before the termination are not material to the claims. Trial Runners does not dispute that Aviceda had the power to terminate without cause.

According to Aviceda, Trial Runners improperly terminated its access to the study database after the termination. (Id. ¶¶ 59-69). But Aviceda also acknowledges that the issue was resolved two days later (Id. ¶ 72), and it makes no allegation that any harm resulted.

Aviceda also alleges a general air of uncooperativeness in the transition process. For example, it accuses Trial Runners of making threats to obstruct a transition unless it was paid. (E.g., Compl. ¶ 80). It alleges that Trial Runners told Aviceda that all communications should be handled through the company's then-counsel. (Id. ¶ 79). And it alleges that Trial Runners announced that it planned to "move forward with the study objectives until the termination date," which Aviceda interpreted to mean that Trial Runners did not plan to cooperate with the termination. (Id. ¶ 81). But while this is all fertile ground for a declaratory judgment claim about what Trial Runner's obligations were going forward, there is no non-conclusory allegation that any of the conduct alleged caused Aviceda to suffer an injury.

The Complaint contains three counts: a count for breach of contract (Count 1), a count for breach of the implied covenant of good faith and fair dealing (Count 2), and a count for declaratory judgment (Count 3). It seeks compensatory damages (demand for relief 2), costs and fees (demand 3), and declaratory relief (demand 4), along with a standard demand for "all other and further relief deemed just and proper by the Court."

---

[1] The termination for cause or for material breach provisions are found in Section 7.3 and 7.4 of the contract. (Id. Ex. 1 at 15).

Since the filing of the complaint, the parties have worked out substantially all of the issues relating to transition to a new CRO. Trial Runners assigned its contracts with study sites to Aviceda. (Healy Decl. ¶ 2 & Ex. 1-2). Aviceda also has full control of the study database. (Id. ¶ 3). The parties have agreed on rules for payments to third parties (study sites and vendors) going forward (Id. ¶ 4). [2]

Trial Runners plans to assert, in a counterclaim, that it is still owed a significant sum of money. From discussions between counsel, counsel understands that Aviceda may claim that it has *overpaid,* though it has not asserted that claim in this case. In any event, the parties still have financial issues to work out that are not part of the claims Aviceda pleaded. But the issues that led to the filing of this lawsuit, and that are alleged to be the basis for the claims for breach of contract and breach of the implied covenant of good faith and fair dealing, have been resolved, and no damages are alleged to have flowed from them.

## ARGUMENT

The "irreducible constitutional minimum" for standing to sue requires injury in fact, a causal connection between the injury and the conduct complained of, and a likelihood that the injury would be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992). This motion focuses on the absence of an injury in fact. An injury in fact must be "actual or imminent, not conjectural or hypothetical." *Id.* at 560 (citation and internal quotation marks omitted). The injury that supports standing must be "actual or imminent." *See id*. at 564 n.2 That is the injury must be "certainly impending" or if there is at least a "substantial risk that harm will occur." *See Reddy v. Foster,* 845 F.3d 493, 500-505 (1st Cir. 2017).

---

[2] Indeed, perhaps the claim for a declaratory judgment has or will shortly become moot, though Trial Runners does not make that argument in this motion.

Aviceda has the burden to establish injury in fact. *Id.* at 561. It must "demonstrate standing for each claim [it] seeks to press." *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 352 (2006). And it must show standing for each form of relief it seeks. *See Friends of the Earth, Inc. v. Laidlaw Envt'l Servs.,* 528 U.S. 167, 185 (2000) (plaintiff had to show standing separately for injunctive relief and civil penalties). This burden requires Aviceda to "establish[] sufficient factual matter to plausibly demonstrate [its] standing to bring the action," *Hochendoner v. Genzyme Corp.,* 823 F.3d 724, 731 (1st Cir. 2016), with respect to each claim and each demand for relief. "Neither conclusory assertions nor unfounded speculation can supply the necessary heft." *Id.*

Aviceda had standing to bring its claim for declaratory relief when it brought its claim. Although Trial Runners denies that it had breached or threatened to breach the contract or the implied covenant of good faith and fair dealing in a way that could cause Aviceda to suffer an injury at some point after commencement of the action, Aviceda surely has standing to say that Trial Runners is wrong about that and that there was a real threat of future injury as of Oct. 23, 2023, the date of the complaint. That is the point of Count 3 of the Complaint and the fourth demand for relief.

But the Complaint also seeks damages and asserts claims for breach of contract and breach of the implied covenant (counts 1 and 2). Yet Aviceda does not allege, except in the most conclusory way (Compl. ¶ 91), that any injury had actually resulted by the time it filed its complaint. And even that conclusory allegation occurs in the count for breach of contract but not the count for breach of the implied covenant. Unlike a typical case of breach of contract, when the plaintiff might allege that the defendant failed to pay an amount due or that because of its

failure to perform some specific harm resulted, no plausible reading of the Complaint supports the view that Aviceda has already suffered the injury.

In *American Postal Workers Union v. Frank,* 968 F.2d 1373 (1st Cir. 1992), the First Circuit made it clear that the standing inquiry for a claim for damages on account of past injury is distinct from the inquiry for a claim for forward-looking relief on account of threatened injury. There, members of a union who had undergone mandatory drug tests when they applied for jobs sued, claiming that the mandatory tests were unconstitutional. Because drug tests were only required of job *applicants,* and the plaintiffs already had jobs, the court held that while they had standing to seek damages, they lacked standing to seek an injunction, because there was no threat of future harm. *Id.* at 1376-77. The situation in this case is the converse of the situation in *American Postal Workers*—Aviceda has pleaded a risk of future harm but not past harm—but the principle is the same. Standing to assert a damages claim and a claim for declaratory relief must be judged separately. While imminent injury is of course sufficient to show injury in fact, *see Lujan,* 504 U.S. at 560, injury that is imminent but that has not already occurred can only support forward-looking relief, not backward-looking relief. *Lujan* itself was a claim for declaratory relief, not damages.

CONCLUSION

For these reasons, the Court lacks jurisdiction over Counts 1 and 2 and should dismiss them.

> Respectfully submitted,
>
> TRIAL RUNNERS, LLC
>
> By its attorney:
>
> */s/ Theodore J. Folkman*
>
> Theodore J. Folkman (BBO No. 647642)
> RUBIN AND RUDMAN LLP
> 53 State St.
> Boston, MA 02109
> (617) 330-7135
> tfolkman@rubinrudman.com

Dated:  December 26, 2023